## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **MICHELLE ARES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-19-CV-00283-FM** |
| | § | |
| **AEROTEK, INC.; and SCHNEIDER** | § | |
| **ELECTRIC USA,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER DENYING MOTION FOR JUDGMENT AS A MATTER OF LAW AND REMITTING COMPENSATORY DAMAGES AWARD

Before the court is "Schneider Electric's Renewed Motion for Judgment as a Matter of Law or, Alternatively, Motion for New Trial" ("Motion") [ECF No. 167], filed October 21, 2022, by Schneider Electric USA ("Defendant"). Therein, Defendant renews its motion for judgment as a matter of law on the final element of Michelle Ares' ("Plaintiff") sexual harassment claim or, alternatively, moves for a new trial.[1] After due consideration, the Motion is **DENIED IN PART** and **GRANTED IN PART**.

## I.    BACKGROUND

### A.    *Factual Background*

Defendant manufactures electrical products.[2] In November 2017, Defendant hired Plaintiff as a Quality Technician.[3] During the hiring process, Plaintiff filled out several administrative forms and signed Defendant's sexual harassment policy on one of its onboarding

---

[1] "Schneider Electric's Renewed Motion for Judgment as a Matter of Law or, Alternatively, Motion for New Trial" ("Mot.") 2, 11, ECF No. 167, filed Oct. 21, 2022.

[2] "Jury Trial Transcript Volume 3 of 5" ("Tr. 3") 84, ECF No. 164, filed Oct. 13, 2022

[3] "Jury Trial Transcript Volume 2 of 5" ("Tr. 2") 34, 31, ECF No. 163, filed Oct. 13, 2022.

tablets, although she was given little opportunity to familiarize herself with that policy.[4] She was also placed on a three-month probationary period.[5]

Immediately thereafter she began to be sexually harassed by several male coworkers, including one of the men tasked with her initial training.[6] These men would massage Plaintiff's back, hit on her and make other sexual advances, hug her, bite her, grab her arms, kiss her hands, and sniff her provocatively, all despite her protestations.[7] One tried unsuccessfully to grab her crotch.[8] Some would watch pornography on their phones while working next to her.[9] Others would make Plaintiff do work on her hands and knees while making vulgar, insulting, and sexually-charged comments about her.[10] They tried to engage in graphic, sexually-charged conversations with her.[11] Plaintiff's harassment often occurred in a room that supervisors and managers regularly walked through.[12] Indeed, many employees witnessed this conduct.[13]

Plaintiff initially reported her sexual harassment to Mr. Jesus Estrada, a technical lead, who had tasked the offending men with helping train Plaintiff.[14] Although not Plaintiff's direct

---

[4] *Id*. at 33–35.

[5] *Id*. at 32.

[6] *Id*. at 38, 42–48, 114.

[7] *Id*. at 45–46, 70–71, 74.

[8] *Id*. at 71.

[9] *Id*. at 56.

[10] *Id*. at 58.

[11] *See, e.g., id.* at 47, 64, 68–70, 72–73.

[12] *Id*. at 45.

[13] *Id*.

[14] *Id*. at 57; Tr. 3 at 90.

supervisor,[15] Mr. Estrada told Plaintiff that it was his decision whether Plaintiff advanced beyond her probationary period.[16] Mr. Estrada ignored Plaintiff's pleas to intervene with her harassers, even though he personally witnessed much of the harassment.[17] In April 2018, five months into the job, Plaintiff emailed Mr. Ben Diaz, Defendant's hiring manager, and Ms. Esther Flores, an on-site representative for Aerotek, Inc. ("Aerotek"), a staffing company that provides Defendant with supplemental workforce.[18] Defendant and Aerotek then initiated a formal investigation.[19] Plaintiff was terminated shortly thereafter.[20]

### B.    Procedural Background

In August 2019, Plaintiff filed suit against Defendant and Aerotek in Texas state court, raising claims of retaliation, disability discrimination, and sexual harassment.[21] Aerotek removed.[22] The court dismissed her retaliation and disability discrimination claims as to Defendant and Aerotek[23] and her sexual harassment claim solely as to Aerotek.[24] As such, only Plaintiff's sexual harassment claim as to Defendant survived.

---

[15] Tr. 3 at 90.

[16] Tr. 2 at 76–77.

[17] *Id*. at 71, 74.

[18] *Id*. at 95–99; Tr. 3 at 85.

[19] Tr. 3 at 15, 50.

[20] *Id*. at 24, 28–29.

[21] "Defendant's Notice of Removal," Ex. A, "Plaintiff's Original Petition and Request for Disclosure" 9–10, ECF No. 1-4, filed Oct. 4, 2019.

[22] *See* Defendant's Notice of Removal, ECF No. 1, filed Oct. 4, 2019.

[23] "Order on Motions for Summary Judgment" 25–26, ECF No. 92, entered Feb. 10, 2021.

[24] "Order Granting Motion for Reconsideration" 6–7, ECF No. 99, entered June 17, 2021.

In September 2022, the court conducted a four-day trial during which Defendant moved for judgment as a matter of law based on, *inter alia*, Plaintiff's alleged failure to establish the fifth element of co-worker harassment, namely that Defendant knew or should have known of the harassment and failed to take prompt remedial action.[25] The court declined to grant Defendant's motion,[26] which thereby "submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."[27]

At the close of trial, the jury found that 1) Plaintiff was sexually harassed by her co-workers, 2) Defendant knew or should have known about the harassment, and 3) Defendant failed to take prompt remedial action.[28] The jury awarded Plaintiff $500,000 in compensatory damages.[29]

In October, Defendant renewed its motion for judgment as a matter of law.[30] Therein, Defendant contends the evidence was insufficient to show it knew or should have known of Plaintiff's harassment, arguing the harassment was not sufficiently open and obvious, and pointing out Plaintiff "failed to take advantage of corrective opportunities available to her."[31] Further, once Plaintiff reported the harassment, Defendant "took prompt remedial action."[32]

---

[25] Tr. 3 at 122.

[26] *Id.* at 146.

[27] FED. R. CIV. P. 50(b).

[28] "Jury Verdict Form" 3–4, ECF No. 155, entered Sept. 30, 2022.

[29] *Id.* at 4.

[30] *See* Mot.

[31] *Id.* at 8–9, 3.

[32] *Id.* at 6.

Alternatively, Defendant moves for a new trial, largely based on the same arguments, while also asserting the jury instructions were erroneous and the award excessive.[33]

## II.     <u>LEGAL STANDARD / APPLICABLE LAW</u>

### A.     *Renewing a Motion for Judgment as a Matter of Law*

Under Federal Rule of Civil Procedure ("Rule") 50, a court may grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[34] "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."[35] Moving for judgment as a matter of law is a prerequisite for moving for a renewed judgment as a matter of law.

### B.     *Motion for a New Trial*

Rule 59 authorizes a court to grant a new trial "on all or some of the issues . . . and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[36] "A motion for a new trial must be filed no later than 28 days after the entry of judgment."[37]

---

[33] *Id*. at 11–19.

[34] FED. R. CIV. P. 50(a).

[35] *Id*. at 50(b).

[36] *Id*. at 59(a)(1).

[37] *Id*. at 59(b).

III.   **DISCUSSION**

The jury returned a verdict on September 30, 2022, finding Plaintiff was subjected to sexual harassment and a hostile work environment.[38] Defendant filed its Motion on October 21.[39] The Motion is therefore timely. Therein, Defendant renews its motion for judgment as a matter of law on the final element of Plaintiff's sexual harassment claim, arguing the evidence was insufficient to show Defendant "knew or should have known of the harassment" or "failed to take prompt remedial action."[40] Alternatively, Defendant moves for a new trial.[41]

A.      *Judgment as a Matter of Law*

Judgment as a matter of law is appropriate only when "the jury's factual findings are not supported by substantial evidence or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings."[42] Here, the jury found Defendant liable for Plaintiff's hostile work environment.[43]

A hostile work environment claim under Title VII "consists of five elements: (1) the plaintiff belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action."[44] Defendant contends the evidence at

---

[38] Jury Verdict Form at 3–4.

[39] *See* Mot.

[40] *Id*. at 2 (internal quotation marks omitted).

[41] *Id*. at 11.

[42] *Sec. and Exch. Comm'n v. Life Partners Holdings, Inc*., 854 F.3d 765, 778 (5th Cir. 2017).

[43] Jury Verdict Form at 3–4.

[44] *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004).

trial was insufficient to support a finding on the fifth element, i.e., that it 1) knew or should have known of Plaintiff's harassment and 2) failed to take prompt remedial action.[45]

      a.      Defendant Knew or Should Have Known of Plaintiff's Harassment

An employer may be liable for a hostile work environment if it has actual or constructive knowledge of its employee's harassment.[46] Actual knowledge is imputed to the employer when "someone with authority to address the problem is notified."[47] Constructive knowledge may be established when "the harassment complained of is so open and pervasive that the employer should have known of it, had it but opened its corporate eyes."[48] "[A] corporate enterprise 'knew or should have known' something only when the appropriate persons within that enterprise 'knew or should have known.' In the context of sexual harassment, such persons are those with remedial power over the harasser."[49]

Plaintiff's hostile work environment claim is "based on constructive knowledge, not actual knowledge."[50] With that in mind, the court finds sufficient evidence supports the jury's conclusion that Defendant, at a minimum, should have known of Plaintiff's harassment. First, there was more than "a mere scintilla of evidence"[51] showing Plaintiff's harassment was open

---

[45] Mot. at 2.

[46] *Hernandez v. Yellow Transp., Inc*., 670 F.3d 644, 656 (5th Cir. 2012).

[47] *Sharp v. City of Houston*, 164 F.3d 923, 930 (5th Cir. 1999).

[48] *Id.*

[49] *Id*.

[50] "Plaintiff's Response to Defendant's Motion for Judgment as a Matter of Law and Alternative Motion for New Trial" 2, ECF No. 170, filed Nov. 5, 2022.

[51] *See Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007) ("There must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant.")

and pervasive. Approximately eight men sexually harassed her on a daily basis.[52] Her harassers would massage Plaintiff's back, hug her, bite her, grab her arms, kiss her hands, and sniff her provocatively, despite her protestations, and often in a room that supervisors and managers regularly walked through.[53] Indeed, they "thought they could just touch [her] without [] consequences."[54] Many other employees saw this conduct.[55] One of her harassers tried unsuccessfully to grab her crotch.[56] Others would watch pornography on their phones while working next to Plaintiff.[57] Some would regularly make Plaintiff do work on her hands and knees, all the while making vulgar, insulting, and sexually-charged comments about her.[58] Plaintiff's harassers regularly tried to engage in graphic, sexual conversations with her.[59] They also sexually harassed other women at the company.[60]

Nevertheless, Defendant contends "the alleged harassment in this case is not the kind of outward, visible conduct that courts find to be even potentially open and obvious for the purposes of constructive knowledge," contrasting the facts here with circumstances featuring tangible manifestations of harassment, such as graffiti.[61] Although tangible manifestations may

---

[52] Tr. 2 at 114.

[53] *Id*. at 45–46, 70–71, 74.

[54] *Id*. at 48.

[55] *Id*.

[56] *Id*. at 71.

[57] *Id*. at 56.

[58] *Id*. at 58.

[59] *See, e.g., id.* at 47, 64, 68–70, 72–73.

[60] *Id*. at 59, 61–62; *see Hernandez*, 670 F.3d at 653 ("We have held in the context of sex discrimination that harassment of women other than the plaintiff is relevant to a hostile work environment claim.").

[61] Mot. at 9.

make constructive knowledge more likely, harassment based purely on conduct can also suffice to put an employer on notice.[62] Accordingly, the court cannot say that, as a matter of law, the facts here fail to support a finding of constructive knowledge.

Second, because a reasonably jury could find Plaintiff's harassment was open and pervasive, it could also find that someone with remedial power should have known about Plaintiff's harassment. Remedial power is the ability "to take disciplinary action, to provide significant input into employment decisions, to instruct the offending employees to cease the harassing behavior, or to implement other means of taking remedial action."[63] Defendant points out that Plaintiff only reported her harassment to Mr. Estrada, who was merely an "hourly lead."[64] Although the jury found Mr. Estrada was not Plaintiff's supervisor,[65] whether he had sufficient remedial powers is debatable. On the one hand, Mr. Estrada was designated a "technical lead" whose job was simply "to remove barriers as it relates to any technical portion of the job."[66] He did not have authority to make hiring, demotion, promotion, or disciplinary decisions.[67] On the other hand, Mr. Estrada was in a position of authority to train and instruct Plaintiff and her harassers, including, it seems, the power to instruct her harassers "to cease the harassing behavior."[68]

---

[62] *See, e.g., Sharp*, 164 F.3d at 926–27; *Williamson v. City of Houston, Tex.*, 148 F.3d 462, 463–64 (5th Cir. 1998).

[63] *Sharp*, 164 F.3d at 929.

[64] Mot. at 8.

[65] Jury Verdict Form at 1.

[66] Tr. 3 at 90.

[67] *Id*. at 95.

[68] Tr. 2 at 77, 74–75; *see Sharp*, 164 F.3d at 929 (holding that remedial power includes the ability "to instruct the offending employees to cease the harassing behavior").

Regardless, the standard is not whether someone with remedial power *in fact* knew of Plaintiff's harassment, but whether such a person *should have* known about the harassment.[69] Here, a reasonable jury could find that, because Plaintiff's harassment was sufficiently open and pervasive, a person with remedial power—not necessarily Mr. Estrada—should have known of it and, by extension, "the employer should have known of it, had it but opened its corporate eyes."[70]

      b.      Defendant Failed to Take Prompt Remedial Action

Defendant asserts Plaintiff's claim also fails because Defendant took remedial action once Plaintiff formally reported her harassment.[71] In other words, it believes its response was "prompt" because it immediately followed Plaintiff's formal complaint.

Defendant's assertion, however, "conflate[s] the concepts of constructive and actual notice."[72] The fifth element of a hostile work environment claim requires that a defendant "knew or should have known of the harassment" and "failed to take prompt remedial action."[73] Thus, it may be liable in circumstances where it knew of the harassment and failed to act promptly *or* where it should have known and failed to act promptly. Said another way, where a claim is based at least on constructive knowledge, the duty to act promptly arises once a defendant is put on notice, not when a formal complaint is made.[74] If, for example, a defendant had constructive

---

[69] *Sharp*, 164 F.3d at 930.

[70] *See id.*

[71] Mot. at 3–6.

[72] *See Sharp*, 164 F.3d at 931.

[73] *Hockman*, 407 F.3d at 325.

[74] *See Williamson*, 148 F.3d at 465; *Roque v. New 888 Rest., L.L.C.*, 2015 WL 5692572, *6–7 (W.D. Tex. 2015).

knowledge of a hostile work environment for years but remedied the situation only once a formal complaint had been filed, it could not be said to have acted promptly. Otherwise, a defendant could "[shut] its corporate eyes"[75] and avoid all liability for open and pervasive—albeit unreported—sexual harassment. This would greatly conflict with Title VII's authorization of negligence-based hostile work environment claims.

Relatedly, Defendant contends Plaintiff's claim fails as a matter of law because she did not properly take advantage of the company's formal grievance procedure, asserting "employees must report alleged harassment according to the applicable anti-harassment policy, and a failure to do so 'is fatal to one's case.'"[76] In support, Defendant purports to leverage Fifth Circuit precedence, citing *Woods v. Delta Beverage Group*, *Lauderdale v. Texas Department of Criminal Justice*, and *Harvill v. Westward Communications*.[77]

These cases are inapposite, however. In *Woods*, the plaintiff was harassed and reported that harassment to her employer, which took remedial action and instructed her to report any subsequent harassment.[78] She was harassed again but failed to report it as instructed, which the

---

[75] *See Sharp*, 164 F.3d at 930.

[76] Mot. at 4 (quoting *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 300 (5th Cir. 2001)) (internal quotation marks omitted) (cleaned up).

[77] *See id.* at 4–5 (citing *Woods*, 274 F.3d 295; *Sims v. Brown & Root Indus. Servs. Inc.*, 78 F.3d 581 (5th Cir. 1996); *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157 (5th Cir. 2007); and *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428 (5th Cir. 2005)). Defendant cites additional Fifth Circuit cases, but they are unreported and, therefore, without precedential force.

[78] *Woods*, 274 F.3d at 299.

Fifth Circuit held was "fatal to her case."[79] Importantly, there was no indication the employer had either actual or constructive knowledge of the subsequent harassment.[80]

*Lauderdale*, meanwhile, dealt with supervisor harassment, which does not require a plaintiff to prove the fifth element of a co-worker harassment claim, i.e., that the employer knew or should have known of the harassment and failed to take prompt remedial action.[81]

In *Harvill*, the plaintiff reported harassment to her supervisor, who failed to take corrective action.[82] Accordingly, the employer had actual knowledge of the harassment. After months of continued harassment, she took her complaints to the proper Human Resources authority.[83] Her employer's sexual harassment policy, however, had explicitly instructed Ms. Harvill to take matters to Human Resources if her immediate supervisor was not handling her harassment complaint satisfactorily.[84] As a result, the Court held, Ms. Harvill "*unreasonably* failed to take advantage of corrective opportunities provided by [her employer]."[85] Therefore, the Court's seemingly-unequivocal statement in *Harvill* that "an employee must take advantage of corrective opportunities provided by the employer" needs to be contextualized within the framework of a reasonableness standard.[86]

---

[79] *Id*. at 300.

[80] *Id*. (noting the harassment "always occurred in private" and, when her employer asked her the day after reporting the harassment whether the harassment had stopped, the plaintiff said "there were 'no problems that day'").

[81] *Lauderdale*, 512 F.3d at 162–63.

[82] *Harvill*, 433 F.3d at 432.

[83] *Id*. at 432–33.

[84] *Id*. at 438.

[85] *Id*. at 439 (emphasis added).

[86] *See id.* at 437.

Such an interpretation is consistent with Supreme Court guidance.[87] In *Meritor Savings Bank v. Vinson*, the Court rejected the "view that the mere existence of a grievance procedure and a policy against discrimination, coupled with [the plaintiff's] failure to invoke that procedure, must insulate [the defendant] from liability."[88] Grievance procedures, after all, can be faulty or ineffective.[89] Citing *Meritor*, the Fifth Circuit held in *Waltman v. International Paper Company* "that the fact that [the plaintiff] did not follow [the defendant's] sexual harassment grievance procedure [did] not alone support summary judgment" in the defendant's favor.[90] *Meritor* remains good law.

Moreover, applying a reasonableness standard, even when an employer has instituted formal grievance procedures, accords with negligence-based hostile work environment claims. Otherwise, an employer could completely discharge its duty under Title VII simply by formalizing anti-harassment policies and grievance procedures while at the same time blatantly neglecting to ensure its employees are in fact protected from harassment. As such, "the existence and effectiveness of an anti-harassment policy may be relevant in determining whether the employer should have known about the hostile environment, but an employer is not necessarily insulated from liability just because there is a grievance procedure, even if the victim has failed to utilize it."[91] Indeed, it is only "*less likely*" an employer had constructive knowledge of

---

[87] *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 806–07 (1998) ("If the plaintiff *unreasonably* failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so.") (emphasis added).

[88] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986).

[89] *See id*.

[90] *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 481 (5th Cir. 1989).

[91] *Sharp*, 164 F.3d at 930 (internal footnote omitted).

harassment—and therefore a duty to promptly remedy it—"if it had in place a procedure by which employees could report instances of harassment."[92]

Here, the court cannot conclude that, as a matter of law, Plaintiff was unreasonable in her failure to utilize formal harassment reporting procedures sooner. She testified that, although she signed a document acknowledging Defendant's sexual harassment policy, she did so using an electronic tablet during a perfunctory onboarding session.[93] She was not given a copy of the policy or any explicit explanation of or training on that policy.[94] Therefore, it is not clear Plaintiff was sufficiently made aware of Defendant's grievance procedures. Subsequently, once she began to be harassed, she alerted Mr. Estrada, whom she considered to be in a position of authority and able to remedy the situation.[95] Plaintiff testified that she did not know she could only report harassment to Ms. Flores and Mr. Diaz, i.e., that reporting to Mr. Estrada was procedurally deficient.[96] She finally reported to Ms. Flores via email after several failed attempts to get help from Mr. Estrada.[97]

For the foregoing reasons, the court concludes a reasonable jury could find that Defendant 1) should have known of Plaintiff's harassment and 2) failed to take prompt remedial action. Accordingly, sufficient evidence supports the fifth element of Plaintiff's claim and Defendant is not entitled to judgment as a matter of law.

---

[92] *Hernandez*, 670 F.3d at 656 (emphasis added).

[93] Tr. 2 at 33–34.

[94] *Id*.

[95] *Id*. at 57, 71, 74–77.

[96] *Id*. at 92–98.

[97] *Id*.

B.      *Motion for a New Trial*

In the alternative, Defendant moves for a new trial "on three grounds: (1) the jury verdict that Schneider Electric knew or should have known about the alleged harassment and failed to take prompt remedial action contravenes the great weight of the evidence, (2) the jury instructions failed to accurately capture Fifth Circuit law requiring plaintiffs to utilize corrective opportunities for reporting harassment pursuant to an anti-harassment policy to trigger an employer's obligation to remedy harassment, and (3) the damages award was excessive."[98] The decision to grant or deny a motion for a new trial, including the determination of whether a verdict is against the great weight of the evidence, is a question committed to the district court's sound discretion.[99] This discretion is even broader when the district court denies, rather than grants, such a motion.[100]

a.      Weight of Evidence

Defendant argues a new trial is proper since "the great weight of the evidence" shows it "did not know, nor should it have known, of harassment, and that once it did," it took prompt, remedial measures. The court disagrees. As discussed in greater detail above, sufficient evidence existed for a reasonable jury to conclude that Plaintiff and other women were openly and pervasively harassed by roughly eight men for several months such that Defendant's supervisors, or at least those with remedial power, should have been aware of the circumstances and taken remedial measures sooner.

---

[98] Mot. at 11.

[99] *Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 230 (5th Cir. 2020).

[100] *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998) ("It goes without saying that review of the denial of a new trial motion is more limited than when one is granted. The denial will be affirmed unless, on appeal, the party that was the movant in district court makes a clear showing of an absolute absence of evidence to support the jury's verdict, thus indicating that the trial court had abused its discretion in refusing to find the jury's verdict contrary to the great weight of the evidence.").

b.      Jury Instructions

Defendant contends the jury instructions failed to "consider the line of Fifth Circuit cases that require Plaintiff to report harassment under the known policies to trigger Schneider Electric's obligation to take prompt remedial action."[101] Additionally, it argues, "the instructions are incorrect because they do not specify *when* Schneider Electric's obligation to take prompt remedial action began."[102] Defendant also takes issue with jury question eight, which asked whether Plaintiff reported to "a Schneider Electric or Aerotek employee with authority to receive, address, or report the complaint," arguing the phrase "with authority . . . to report" is ambiguous.[103]

Defendant's contentions fail. First, as discussed above, the Fifth Circuit does *not* unconditionally require a plaintiff to follow formal harassment reporting procedures to trigger an employer's obligation to take remedial action.[104] Instead, existence of such procedures is merely relevant to the question of whether an employer had constructive knowledge of the harassment.[105] The jury here heard and was able to consider testimony regarding the existence of such procedures and Plaintiff's initial failure to utilize them. Second, Fifth Circuit pattern jury instructions do not require courts to specify when an employer's obligation to take prompt remedial action begins. Rather, they make clear that "[w]hether the employer's actions were

---

[101] Mot. at 13–14.

[102] *Id*. at 15.

[103] *Id*. at 15–16.

[104] *See Meritor Sav. Bank*, 477 U.S. at 72; *Waltman*, 875 F.2d at 481; *Sharp*, 164 F.3d at 930 ("the existence and effectiveness of an anti-harassment policy may be relevant in determining whether the employer should have known about the hostile environment, but an employer is not necessarily insulated from liability just because there is a grievance procedure, even if the victim has failed to utilize it.") (internal footnote omitted).

[105] *Hernandez*, 670 F.3d at 656.

prompt and remedial depends on the facts."[106] Finally, jury question eight was not impermissibly vague as it mirrored standard Fifth Circuit pattern jury instructions, which do not require courts to give juries definitions for what it means to have "authority" or to "report."[107]

        c.     Damages Award

Defendant asserts the jury award of $500,000 in compensatory damages is excessive.[108] Courts in the Fifth Circuit use the "'maximum recovery rule' to determine whether an award is excessive."[109] The "evaluation of what a jury could have awarded is tied to awards in cases with similar injuries. This comparison is limited to cases in the relevant jurisdiction," which, for federal discrimination law, is the United States Court of Appeals for the Fifth Circuit.[110] Specifically, the maximum recovery rule "permits a verdict at 150% of the highest inflation-adjusted recovery in an analogous, published decision."[111] The Fifth Circuit has affirmed or remitted compensatory damage awards for emotional and mental anguish ranging from $7,500 to $150,000.

*Smaller Awards*: Smaller awards have been predicated upon milder and more generalized allegations. In *Farpella-Crosby v. Horizon Health Care*, the Court affirmed a $7,500 award after the plaintiff, who was sexually harassed at work, asserted her work environment was "very

---

[106] Fifth Circuit Pattern Jury Instructions (Civil Cases) (2020) at 153.

[107] *Id.* at 151 (instructing juries to consider whether "the harassment was known by or communicated to a person who had the authority to receive, address, or report the complaint, even if that person did not do so, or the harassment was so open and obvious that Defendant [name] should have known of it") (internal footnote omitted).

[108] Mot. at 16–17; *see* Jury Verdict Form at 4.

[109] *Puga v. RCX Sols. Inc.*, 922 F.3d 285, 297 (5th Cir. 2019).

[110] *Salinas v. O'Neill*, 286 F.3d 827, 831 (5th Cir. 2002) (internal citation and quotation marks omitted).

[111] *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 365 (5th Cir. 2019).

stressful," that she was "embarrassed every time [she] went in there," that she felt "very belittled," "very disgusted," "hopeless," "pretty stupid," and "about two inches high."[112]

In *Vadie v. Mississippi State University*, the plaintiff claimed the discrimination he dealt with "destroyed" him, that he became physically and mentally "ill," and that he saw "many doctors" and took "many pills."[113] He asserted he "could not sleep for months" and that he suffered headaches and nausea.[114] Nevertheless, the Court held that, because the trial record was "devoid of any medical evidence supporting any injury" or "any specific evidence whatsoever supporting [the plaintiff's] broad assertions of emotional injury, . . . an award greater than $10,000 would be excessive."[115]

The Court in *DeCorte v. Jordan* affirmed a $10,500 compensatory award based on emotional and mental anguish where one of the plaintiffs testified to "ongoing sleep and appetite loss, depression, problems with his wife, and anger."[116]

In *Mota v. University of Texas Houston Health Science Center*, the Court affirmed a $15,000 compensatory damages award where the defendant "engaged in repeated, aggressive sexual advances in the face of adamant refusals by" the plaintiff.[117] This conduct was "humiliating and degrading" and, although much of it was verbal, "there was also evidence of repeated physical contact."[118] "Moreover, the record reflect[ed] that [the plaintiff] suffered

---

[112] *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 809 (5th Cir. 1996) (internal quotation marks omitted).

[113] *Vadie v. Miss. State Univ.*, 218 F.3d 365, 377 (5th Cir. 2000).

[114] *Id.*

[115] *Id.* at 378.

[116] *DeCorte v. Jordan*, 497 F.3d 433, 442–43 (5th Cir. 2007).

[117] *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 524 (5th Cir. 2001).

[118] *Id.*

emotional distress and psychological problems in the wake of the harassment" and that he was "compelled to take a leave from his position" as a result.[119]

In *Zamora v. City of Houston*, the Court affirmed a $23,000 award for past damage based on the plaintiff's testimony that he suffered mental anguish and depression due to workplace retaliation.[120] Specifically, the plaintiff testified he was "angry, upset, 'stressed out,' depressed, and isolated. He testified that he secluded himself and that the incident had a negative effect on his personal life and his professional relationships; his demeanor and attitude changed, that he became depressed and sick, that he had severe migraine headaches and insomnia, and that he took out his feelings on his family members."[121]

*Larger Awards*: The Fifth Circuit has affirmed or remitted larger awards when allegations were founded on more severe damages, illuminated with specific evidence. In *Thomas v. Texas Department of Criminal Justice*, the Court affirmed a $30,000 award for past emotional distress and remitted a $75,000 future emotional distress award.[122] Damages were based on the plaintiff's tearful and corroborated testimony that her discrimination left her feeling "like a failure," "isolated from her coworkers," and "helpless to alter her circumstances. She explained that she could not sleep and suffered from nausea. Her depression deepened, and she began dwelling on death. Her treating physician prescribed an antidepressant."[123]

The Court in *Williams v. Trader Publishing Company*, meanwhile, affirmed an award of $100,000 where the plaintiff "testified specifically as to her severe emotional distress due to the

---

[119] *Id.*

[120] *Zamora v. City of Houston*, 798 F.3d 326, 335–36 (5th Cir. 2015).

[121] *Zamora v. City of Houston*, No. H-07-4510, 2014 WL 11310160, *9 (S.D. Tex. Jan. 30, 2014).

[122] *Thomas*, 297 F.3d at 371–72.

[123] *Id.* at 370.

discharge from her position [with defendant employer] resulting in sleep loss, beginning smoking and a severe loss of weight."[124]

In *Forsyth v. City of Dallas*, the Court affirmed $100,000 award based on the plaintiff's weight loss, intestinal troubles, depression (leading to excusal from work), marital problems, and the need to see a psychologist.[125]

In *Salinas v. O'Neill*, the court remitted an award of $150,000 where the plaintiff suffered, among other things, loss of sleep, stress, fear of future retaliation, high blood pressure, and paranoia, which led him to buy an alarm for his house and prohibit his wife from getting the mail by herself.[126] He also took a great amount of sick leave and had dozens of doctor visits.[127]

Finally, in *Giles v. General Electric Company*, the Court remitted an award of $150,000 where the plaintiff testified that he "had trouble sleeping, suffered headaches and marital difficulties, and lost the prestige and social connections associated with his position at [the defendant employer] and his service as treasurer of the local union."[128] His co-worker corroborated this testimony, asserting the plaintiff seemed "despondent, depressed, down and absolutely utterly discouraged about not being able to come back to work."[129]

In applying the maximum recovery rule to the instant case, the court notes that it is not entirely clear how "similar" an injury must be relative to prior awards assessed by the Fifth

---

[124] *Williams*, 218 F.3d at 486-88.

[125] *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996).

[126] *Salinas*, 286 F.3d at 829, 833.

[127] *Id*. at 832.

[128] *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (2001).

[129] *Id*. (internal quotation marks omitted).

20

Circuit.[130] Nevertheless, Plaintiff's alleged damages fall well short of the larger awards listed above. There is very little indication she suffered distinct symptoms like nausea, intestinal troubles, weight loss, paranoia, insomnia, high blood pressure, headaches, marital problems, or suicidal thoughts or that her harassment caused her to need medication or psychological counseling or to develop unhealthy habits.

Instead, Plaintiff testified that, because of her sexual harassment, she would cry after work; that she felt "constantly tired," "emotionally drained," "angry," "helpless," and "cheap"; that she became less friendly and less able to trust men; and that she suffered stress, anxiety, and nightmares about losing her job.[131] She expects these damages to persist.[132] Based solely on this vague testimony, the jury awarded Plaintiff $250,000 to compensate past damage and $250,000 to compensate future damage.[133]

But Plaintiff's allegations are most akin to those found in cases where the Fifth Circuit has affirmed or remitted smaller awards. In particular, they mirror the facts in *Mota*, where the Court affirmed a $15,000 compensatory damages award based on "repeated, aggressive sexual advances" that caused the plaintiff to suffer "emotional distress and psychological problems" and resign from his position.[134]

The maximum recover rule "permits a verdict at 150% of the highest inflation-adjusted recovery in an analogous, published decision."[135] *Mota* was decided in August 2001. Adjusted

---

[130] *See Salinas*, 286 F.3d at 831.

[131] Tr. 2 at 78, 81–83.

[132] *Id*. at 90.

[133] Jury Verdict Form at 4.

[134] *Mota*, 261 F.3d at 524.

[135] *Longoria*, 932 F.3d at 365.

for inflation, the $15,000 compensatory damages award in that case equals $25,081 as of December 2022.[136] Multiplying this by 150% leads to an award of $37,621. That said, the court construes the award in *Mota* as compensating past damages. Here, however, the jury awarded damages based on past and future harms, deeming each to be of equal weight. Therefore, Plaintiff is entitled to an award of $37,621 for past damages and $37,621 for future damages, bringing the total to $75,242.

## IV.   CONCLUSION

Accordingly, the court enters the following order:

1. It is **HEREBY ORDERED** that "Schneider Electric's Renewed Motion for Judgment as a Matter of Law or, Alternatively, Motion for New Trial" [ECF No. 167] is **DENIED IN PART** to the extent it seeks judgment as a matter of law or a new trial on the merits.

2. It is **FURTHER ORDERED** that Schneider Electric's Renewed Motion for Judgment as a Matter of Law or, Alternatively, Motion for New Trial" [ECF No. 167] is **GRANTED IN PART** to the extent it challenges the jury's damages award.

3. It is **FURTHER ORDERED** that Plaintiff's **DAMAGES ARE REDUCED** to $75,242, plus applicable interest.

**SIGNED AND ENTERED** this **13th** day of **February 2023.**

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**

---

[136] Bureau of Lab. Statistics, *CPI Inflation Calculator*, https://www.bls.gov/data/inflation_calculator.htm (accessed Feb. 1, 2023).