UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **MICHELLE ARES,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § § | **EP-19-CV-00283-FM** |
| **AEROTEK, INC. and SCHNEIDER** | § § | |
| **ELECTRIC USA, INC. d/b/a** | § § | |
| **SCHNEIDER ELECTRIC,** | § § | |
| **Defendants.** | § | |

<u>ORDER ON PLAINTIFF'S MOTION TO AMEND THE COURT'S FINAL JUDGMENT</u>

Before the court are "Plaintiff's Rule 59(e) Motion to Amend the Court's Final Judgment" [ECF No. 186], filed June 13, 2023, by Michelle Ares ("Plaintiff") and "Schneider Electric's Response to Plaintiff's Rule 59(e) Motion to Amend the Court's Final Judgment" [ECF No. 189], filed July 12, 2023, by Defendant Schneider Electric USA, Inc. ("Schneider"). Therein, Plaintiff requests the court to amend its Final Judgment by (1) increasing Plaintiff's recovery of mental anguish damages, (2) provide Plaintiff with the option of a new trial vs. remitter damages; and (3) increasing the attorneys' fees awarded to plaintiff.[1] For the foregoing reasons, the court will grant the motion in part and deny it in part.

---

[1] "Plaintiff's Rule 59(e) Motion to Amend the Court's Final Judgment" ("Mot.") 11, ECF No. 186, filed June 14, 2023.

I.       **BACKGROUND**

The underlying facts of this case have been laid out ad nauseum in previous orders.[2] At its

core, this case is a standard and typical Title VII case. Instead, the court will recount the procedural

history and how it got to this point.

This case was removed from state court on October 4, 2019.[3] Plaintiff's claim under the

Texas Workers Compensation Act was severed and remanded to state court while the rest of the

claims remained in Federal Court.[4] After which, discovery hummed along until motions for

summary judgment were filed by Aerotek, Inc. and Schneider individually. In the court's order on

summary judgment, all of Plaintiff's claims against Aerotek, Inc. were dismissed, and most of

Plaintiff's claims against Schneider were dismissed save her Title VII sexual harassment claim.[5]

The case proceeded to trial. At the conclusion of trial, the jury found that Plaintiff was

sexually harassed, and Schneider was liable for damages.[6] The jury further concluded that Plaintiff

was due $250,000.00 in damages for past pain and suffering, inconvenience, mental anguish, and

loss of enjoyment and $250,000.00 in future damages for the same.[7] Following trial, Schneider

filed a motion for judgment as a matter of law, or, alternatively, motion for new trial ("JMOL").

In the judgment as a matter of law order, the court ruled that Plaintiff's damages would be reduced

---

[2] *See* "Order on Motions for Summary Judgment" 1, ECF No. 92, entered Feb. 10, 2021; *see also* "Order Denying Motion for Judgment as a Matter of Law and Remitting Compensatory Damages Award" ("JMOL") 1, ECF No. 172, entered Feb. 13, 2023; *see also* "Order on Motion for Attorneys' Fees" 1, ECF No. 184, entered May 9, 2023.

[3] "Notice of Removal" 1, ECF No. 1, filed Oct. 4, 2019.

[4] "Order Granting Motion to Remand Certain Claims" 1, ECF No. 7, entered Nov. 7, 2019.

[5] "Order on Motions for Summary Judgment" 1, ECF No. 92, entered Feb. 10, 2021; "Order Granting Motion for Reconsideration" 6–7, ECF No. 99, entered June 17, 2021.

[6] "Jury Verdict Form" 3, ECF No. 155, entered Sep. 30, 2022.

[7] *Id.* at 4.

to $75,242.00.[8] Then, the court awarded Plaintiff's counsel $160,767,56 in reasonable attorneys'

fees.[9] It is the courts conclusions in the JMOL, and attorneys' fees order that Plaintiff is

challenging.

## II.   LEGAL STANDARD

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry

of the judgment."[10] The Fifth Circuit has stated that "such a motion is not the proper vehicle for

rehashing evidence, legal theories, or arguments that could have been offered or raised before the

entry of judgment."[11] A Rule 59(e) motion "serves the narrow purpose of allowing a party to

correct manifest errors of law or fact or to present newly discovered evidence."[12] This is "an

extraordinary remedy that should be used sparingly."[13] "[A] judgment should not be set aside

except for substantial reasons."[14]

## III.   DISCUSSION

As a preliminary matter, the parties dispute whether Plaintiff's motion was timely filed or

not. "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of

the judgment."[15] Final Judgment was entered on May 16, 2023, so the deadline to file a Rule 59(e)

---

[8] "Order Denying Motion for Judgment as a Matter of Law and Remitting Compensatory Damages Award" ("JMOL Order") 22, ECF No. 172, entered Feb. 13, 2023.

[9] "Order on Motion for Attorneys' Fees" 17, ECF No. 184, entered May 9, 2023.

[10] FED. R. CIV. P. 59(e).

[11] *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990).

[12] *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (internal quotations omitted).

[13] *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

[14] *Id.*

[15] FED. R. CIV. P. 59(e).

motion was June 13, 2023. Schneider points out that Plaintiff's Certificate of Service lists June 14, 2023, as the day the document was e-filed.[16] Filing on June 14th would, of course, be late.

However, Plaintiff avers that her motion was filed on June 13, 2023, at 11:55 p.m mountain time.[17] Plaintiff continues, that typing in "June 14, 2023" in the Certificate of Service was a mistake. Plaintiff's reply contained an exhibit of her e-file email listing 0:54 a.m. central time as the time filed.[18] A person's common sense should inform them that turning something in—whether it be a motion for Federal Court or a high school homework assignment—five minutes before the deadline is not advisable practice, but the court is satisfied that Plaintiff met her filing deadline and will proceed to the merits of the motion.

### A.      Remitter

In October 2022, Schneider moved for judgment as a matter of law, arguing the evidence was insufficient to establish its liability for the sexual harassment and hostile work environment Plaintiff suffered at the hands of its employees.[19] Alternatively, Schneider requested a new trial on, among other things, the issue of damages, asserting the jury's $500,000 award was excessive.[20] The court denied Schneider's motion except with respect to damages. Applying the "maximum recovery rule," the court found the jury's award excessive and remitted damages to $75,242.[21]

---

[16] "Schneider Electric's Response to Plaintiff's Rule 59(e) Motion to Amend the Court's Final Judgment" 2, ECF No. 189, filed July 12, 2023.

[17] "Plaintiff's Reply to Defendant's Response to Plaintiff's Rule 59(e) Motion to Amend the Court's Final Judgment" 1, ECF No. 190, filed July 14, 2023.

[18] "Notice of Electronic Filing" 1, ECF No. 190–1, filed July 14, 2023.

[19] "Schneider Electric's Renewed Motion for Judgment as a Matter of Law or, Alternatively, Motion for New Trial" 3–11, ECF No. 167, filed Oct. 21, 2022.

[20] *Id*. at 11–19.

[21] JMOL Order at 17–22; *see Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 365 (5th Cir. 2019).

In doing so, however, the court neglected to grant Plaintiff a choice between accepting the remittitur or seeking a new trial on damages. Plaintiff is correct that she should have been given such a choice.[22] Indeed, a court "may not reduce the amount of damages without giving the plaintiff the choice of a new trial, for to do so would deprive the parties of their constitutional right to a jury."[23] The court will amend final judgment accordingly.

In addition to that correction, Plaintiff also moves the court to increase the remitted damages, arguing the court misapplied the maximum recovery rule and, as a result, excessively reduced damages.[24]

The maximum recovery rule "permits a verdict at 150% of the highest inflation adjusted recovery in an analogous, published decision."[25] The court in its prior order reviewed ten published decisions from courts in the Fifth Circuit, ultimately finding Plaintiff's damages most akin to those underlying *Mota v. University of Texas Houston Health Science Center* ("*Mota*"), and remitted damages accordingly.[26] *Mota* concerned two professors employed by the University of Texas, one of whom "engaged in repeated, aggressive sexual advances in the face of adamant refusals by" the other.[27] Although much of the conduct was verbal, "there was also evidence of repeated physical contact."[28] As for damage, the plaintiff "suffered emotional distress and psychological problems

---

[22] Mot. at 2.

[23] *Foradori v. Harris*, 523 F.3d 477, 503 (5th Cir. 2008).

[24] Mot. at 2–9.

[25] *Longoria*, 932 F.3d at 365.

[26] JMOL Order at 18–19, 21–22.

[27] *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 524 (5th Cir. 2001).

[28] *Id.*

in the wake of the harassment," which compelled him to take a leave of absence from his position.[29]

In seeking a higher remittitur, Plaintiff makes several, ultimately unsuccessful, arguments.

*Categories of nonpecuniary damages*: First, Plaintiff asserts the court, in remitting her damages, focused only on her mental anguish, which she defines as "manifest[ing] after an event," and neglected to consider inconvenience and loss of enjoyment of life, which she defines as the real-time experience of "living through the [harassment] itself."[30] She cites no authority for this distinction, however, and instead cuts these definitions out of whole cloth. Contrary to her position, "mental anguish," "inconvenience," and "loss of enjoyment of life" are simply three examples of closely related, often synonymous forms of nonpecuniary damage that are recoverable under Title VII.[31] Indeed, such examples include "emotional pain," which on its face is scarcely distinguishable from "mental anguish."

Moreover, the court *did* consider Plaintiff's real-time experiences: her remitted damages were based in part on testimony in which she asserted she felt "emotionally drained," "angry," "helpless," and "cheap" while she was "going through" the harassment.[32]

Similarly, Plaintiff suggests the court neglected to consider loss of enjoyment of life to the extent her harassment "effected [sic] [her] personality and relationships."[33] Not only does Plaintiff now frame loss of enjoyment of life as an after-the-fact form of damage,[34] completely contradicting

---

[29] *Id.*

[30] Mot. at 3.

[31] *See* 42 U.S.C. § 1981a(b)(3) ("compensatory damages" include "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses").

[32] "Jury Trial Transcript Volume 2 of 5" ("Tr. 2") 81, ECF No. 163, filed Oct. 13, 2022.

[33] Mot. at 4.

[34] Plaintiff's motion refers to her trial testimony in which she describes on-going, after-the-fact changes to her personality and relationships: "I used to be a lot friendlier, you know. I think my relationship with men shifted. . .

her previous definition, her intimation isn't even true. The court explicitly considered her testimony on this point, such as her assertion that she became less friendly and less able to trust men.[35]

In short, the court never explicitly weighed only Plaintiff's "mental anguish" while neglecting her "inconvenience" or "loss of enjoyment of life." Instead, the court considered the entirety of Plaintiff's testimony regarding the damage, both real-time and after-the-fact, that she suffered due to her harassment.

*Egregiousness of the harassment*: Second, Plaintiff uses her manufactured distinction between forms of nonpecuniary damage as a backdoor for arguing that the court should have considered the real-time "frequency, magnitude, and outrageousness" of her harassment.[36] Indeed, the bulk of her remittitur discussion highlights the egregiousness of her harassers' conduct, which consisted of extremely vulgar language and highly inappropriate touching or attempted touching.[37]

As awful as such behavior was, however, conduct is not the same thing as damage since the same conduct could cause different degrees of damage in different people. It would therefore be inappropriate for the court to speculate as to Plaintiff's damage based on the conduct that gave rise to it. Accordingly, in remitting damages, the court properly considered only evidence of how Plaintiff's harassers subjectively impacted her, such as her assertions during trial that she: cried

---

my friendships with my colleagues are totally different now. I enjoyed working with gentlemen before. . . And, now, I'm afraid, you know, to get too close to them." Mot. at 4 (citing Tr. 2 at 81–85).

[35] JMOL Oder at 21.

[36] Mot. at 6.

[37] *Id*. at 4–6.

often after work; felt stressed, angry, helpless, and cheap; became less friendly and trusting; and suffered anxiety and nightmares.[38]

*Analogizing to caselaw*: Finally, Plaintiff argues her damages are "at least as substantial" as other decisions supporting higher awards, citing four specifically: *Dulin v. Board of Commissioners of the Greenwood Leflore Hospital* ("*Dulin*"), *Tureaud v. Grambling State University* ("*Tureaud*"), *Thomas v. Texas Department of Criminal Justice* ("*Thomas*"), and *Giles v. General Electric* ("*Giles*").[39]

The court may not consider *Dulin* or *Tureaud* under the maximum recovery rule since that rule only permits consideration of published decisions.[40] *Dulin* and *Tureaud* are unpublished.[41] Furthermore, a motion to amend judgment "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence" and "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[42] Plaintiff simply arguing that *Dulin* and *Tureaud* are

---

[38] JMOL Order at 21; *see Giles v. Gen. Elec.*, 245 F.3d 474, 488 (5th Cir. 2001) ("There are two requirements to prove emotional distress, the first of which is specificity with respect to the alleged injury: There must be a specific discernable injury to the claimant's emotional state, proven with evidence regarding the nature and extent of the harm. Hurt feelings, anger and frustration are part of life and are not the types of harm that could support a mental anguish award. Damages for emotional distress may be appropriate, however, where the plaintiff suffers sleeplessness, anxiety, stress, marital problems, and humiliation. [¶] Second, we require more than vague allegations to establish existence of the injury.") (internal citations and quotation marks omitted) (cleaned up).

[39] Mot. at 3, 7–9 (discussing *Dulin v. Bd. of Comm'rs of the Greenwood Leflore Hosp.*, 586 F. App'x 643 (5th Cir. 2014); *Tureaud v. Grambling State Univ.*, 294 F. App'x 909 (5th Cir. 2008); *Thomas v. Tex. Dep't of Criminal Justice*, 297 F.3d 361 (5th Cir. 2002); *Giles*, 245 F.3d 474).

[40] *See Longoria*, 932 F.3d at 365.

[41] *See Dulin*, 586 F. App'x 643; *Tureaud*, 294 F. App'x 909.

[42] *Edionwe v. Bailey*, 860 F.3d 287, 294–95 (5th Cir. 2017) (citations and internal quotation marks omitted) (cleaned up).

preferable analogs for remitting damages is (1) a far cry from seeking to correct a manifest error of law and (2) a mere rehashing of that which could have been raised earlier.

Meanwhile, the court already assessed *Thomas* and *Giles* in its order remitting damages, ultimately finding *Mota* more analogous here.[43] Plaintiff's contentions regarding *Thomas* and *Giles* therefore fail for the same "manifest error" and "rehashing" reasons just discussed. Regardless, the court reiterates its prior reasoning: damages in *Thomas* and *Giles* were both corroborated by third parties,[44] unlike those asserted here or in *Mota*. As the Fifth Circuit has emphasized, "[w]e prefer corroboration."[45] The plaintiff in *Thomas*, additionally, became suicidal and was prescribed antidepressants.[46] Plaintiff's asserted damages here simply do not rise to such a tangible level.

Plaintiff's uncorroborated testimony established that her damages included feeling "distressed," "cheap," "helpless," "humiliated," "emotionally drained," and "angry," which caused her to suffer nightmares, fatigue, anxiety, depression, and frequent bouts of crying.[47] She asserted she wanted to quit her job, that her relationships suffered, and that she became less friendly.[48] Thus, Plaintiff's relatively amorphous damages overlap neatly with those in *Mota*, in which the plaintiff vaguely "suffered emotional distress and psychological problems," "came to avoid

---

[43] JMOL Order at 19–20.

[44] *Thomas*, 297 F.3d at 370; *Giles*, 245 F.3d at 488.

[45] *Thomas*, 297 F.3d at 368.

[46] *Id*. at 370.

[47] Tr. 2 at 75, 78, 81–82.

[48] *Id*. at 83.

engagements and conferences at which [his harasser] was also present," and eventually "felt compelled to take a leave from his position."[49]

In short, the court declines to amend the remittitur beyond simply granting Plaintiff a choice between accepting the remitted damages or pursing a new trial on damages. Otherwise, her remitted damages remain $75,242. Plaintiff shall inform the court of her decision within fourteen days from entry of this order.

### B. Attorneys' Fees

Lastly, Plaintiff contends that the court's award of attorneys' fees was incorrect. Specifically, the Plaintiff argues that (1) civil rights attorneys are due larger fee awards simply by nature of the cases they work, (2) the court, apparently, made its rate determination on the basis of a single case, and (3) the court ignored another El Paso division case that awarded a higher rate.[50] It is also noted that Plaintiff is not contesting the court's determination of reasonable hours, only its hourly rate determinations.

As to the first contention, the Fifth Circuit has clearly stated that "the lodestar method yields a fee that is presumptively sufficient to achieve this objective."[51] The objective being a reasonable fee sufficient to induce a capable attorney to undertake a meritorious civil rights case.[52] Plaintiff misunderstands the passage she cites from *Johnson v. Ga. Highway Express, Inc.* When the Fifth Circuit stated that "[a]n attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience. . ." the Court

---

[49] *Mota*, 261 F.3d at 524.

[50] Mot. at 9–10.

[51] *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016).

[52] *See id*.

did not mean a civil rights attorney is owed a higher fee award, the Court meant that a more experienced civil rights attorney may be due a higher award than a less experienced civil rights attorney.[53] Afterall, *Johnson* was a Title VII class action case which is why the Court used civil rights attorney experience as an example.[54]

Plaintiff's next two points are particularly humorous. Plaintiff states that the "Court based its decision on the attorney fee rates by citing a prior case in which an experience attorney billed $300 per hour."[55] Such a statement is factually false, and one would hope a Plaintiff would read the orders of the court overseeing her claim with more rigour. When determining reasonable hourly rates for the attorneys and legal assistant involved, the court considered Plaintiff's six attorney affidavits, the Texas Employment Lawyers Association 2022 "Attorneys' Fees Hourly Rates Yearbook,"[56] Schneider's affidavit, and numerous prior cases in the El Paso Division.[57] The court did *far more* than make its decision on reasonable hourly rates on the basis of one prior case.

Additionally, Plaintiff makes an incorrect implication that reviewing a non-civil rights case when determining fee awards in a civil rights case is incorrect. As Plaintiff points out in *Johnson*, the Fifth Circuit held that the experience of one's attorney is a lodestar factor. The non-civil rights case was reviewed by this court in its fee determination because "an El Paso court determined reasonable attorney fee rates of $300 an hour for a veteran attorney with decades of experience

---

[53] *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974).

[54] *Id.* at 715.

[55] Mot. at 10.

[56] The court noted that it did not find TELA's rate yearbook very probative because it uses rates for the entire Western District of Texas, but the court, nevertheless, considered it.

[57] "Order on Motion for Attorneys' Fees" 5–6, ECF No. 184, entered May 9, 2023.

and $200 an hour for a newer attorney was reasonable."[58] The cited case is very probative regarding the "experience" factor; regardless, of whether it is a civil rights case or not.

Next, the Plaintiff argues that the court did not consider cases awarding larger fees in El Paso like *Edwards v. Aaron Rents Inc*.[59] First, a district court does not have to review every single attorney fee award that has ever occurred in the division. Second, the fact that this court did not cite cases with higher hourly rate awards does not mean that the court did not review said cases before writing the order.[60] Third, the Plaintiff gets the facts of *Edwards* wrong because the court did not award $325 per hour; in actuality, the court awarded $225 per hour as reasonable.[61]

Beyond everything already outlined, none of Plaintiff's arguments regarding the attorneys' fees award come close to "correcting manifest errors of law or fact" or to "present newly discovered evidence." Therefore, the court declines to change the attorneys' fees award.

## IV.    CONCLUSION

Accordingly, the court enters the following orders:

1. It is **HEREBY ORDERED** that "Plaintiff's Rule 59(e) Motion to Amend the Court's Final Judgment" [ECF No. 186] is **DENIED IN PART**. In so far, that the court declines to alter both the remitted damages and the attorneys fee award.

2. It is **FURTHER ORDERED** that "Plaintiff's Rule 59(e) Motion to Amend the Court's Final Judgment" [ECF No. 186] is **GRANTED IN PART**. In so far, that Plaintiff should have been given the option between her remitted damages award or a new trial.

3. It is **FURTHER ORDERED** that Plaintiff **SHALL** recover from Schneider Electric USA, Inc. d/b/a Schneider Electric $75,242.00 in past and future damages **OR** request a new trial on damages.

---

[58] *Id.*

[59] Mot. at 10.

[60] The court specifically addressed higher fee awards in the division when it stated, "[f]or many of the higher hourly rates awarded, there is a common denominator in that the defendants in those cases did not contest the hourly rates."

[61] *Edwards v. Aaron Rents, Inc.*, 482 F.Supp. 803, 812 (W.D. Tex. 2006).

4.  It is **FURTHER ORDERED** that the Plaintiff will have **14 days** from the date this order is entered to declare whether she will accept her remitted damages, as per the Final Judgment, or request a new trial on damages.

**SIGNED AND ENTERED** this **22nd** day of **August 2023.**

 

_____

**FRANK MONTALVO**
**SENIOR UNITED STATES DISTRICT JUDGE**